FILED

2005 Sep-22  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| H&R BLOCK EASTERN ENTERPRISES, INC. | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 1:05-cv-1262-RBP** |
| | ) | |
| PATRICIA DAIL, LINDA PARKER, and P&L TAX SERVICE | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff H&R Block Eastern Enterprises, Inc.'s

Motion to Dismiss Defendants Parker's and Dail's Counter-Claims, filed on August 2, 2005.

## FACTS AND PROCEDURAL HISTORY

On June 9, 2005, plaintiff H&R Block Eastern Enterprises, Inc. ("Block"), a Missouri

corporation, filed action CV-05-1262-RBP against Patricia Dail and Linda Parker, both residents

of Gadsden, Alabama and P&L Tax Service, a business located in Gadsden, Alabama. In Count

One, Block alleges that both Dail and Parker, former employees of Block, breached their

respective employment contracts with Block. Block claims that Dail and Parker both agreed,

through signed employment agreements, not to compete with Block for a period of two years.[1]

---

[1]Specifically, Block claims that paragraph 11 of Parker's Agreement states "that for two (2) years following the voluntary or involuntary termination of Associate's employment, Associate shall not, directly or indirectly:...Solicit Company Clients for purposes of offering to such clients: (I) tax return preparation services, (ii) electronic filing of tax returns, or (iii) any other product or service that the Company offers to its clients within Associate's district of employment." Likewise, Block claims that paragraph 9 of Dail's Agreement states that "for two (2) years following the voluntary or involuntary termination of Associate's

Block further alleges that both Dail and Parker agreed neither to solicit Block's clients for a period of one year following termination of employment, nor to interfere with Block's continuing relationships with its employees.[2] Block claims that defendants Parker and Dail have prepared tax returns for defendant P&L Tax Service, and have, either individually or together, "solicited and/or provided tax preparation services to clients of H&R Block." (Compl. ¶ 27.)

In Count Two, Block alleges that defendants Dail, Parker and P&L Tax Service ("all defendants") have tortiously interfered with its business relations. Specifically, Block contends that it had business relationships with its clients, and that all defendants, knowing of these relationships, solicited, and continue to solicit, Block's clients "wrongfully intending that the clients terminate their relationship with H&R Block and enter into a relationship with defendants for tax preparation services." (Compl. ¶ 39.) Block alleges that all defendants intentionally and without justification interfered with Block's business relationships.

In Count Three, labeled "Count IV" in the complaint, Block alleges that defendants Dail, Parker and P&L Tax Service "have obtained and continue to possess H&R Block's confidential and proprietary business information and trade secrets, including but not limited to customer lists, pricing information and methodologies." (Compl. ¶ 43.) Block alleges that the information in question derives independent economic value from being secret, and that it uses reasonable

---

employment...Associate will not directly or indirectly solicit, divert or take away the Company's Clients or otherwise interfere with the Company's continuing relationships with its clients."

[2] Specifically, Block points to paragraph 12 of Parker's Agreement and paragraph 10 of Dail's agreement for its assertion that Parker and Dail agreed "that during their 'employment and for one (1) year following the voluntary or involuntary termination of Associate's employment, Associate will not directly or indirectly,' solicit H&R Block's 'employees to leave the Company or to work for a competitor of the Company or otherwise interfere with the Company's continuing relationships' with its employees."

efforts to maintain that secrecy. Block also alleges that all defendants have misappropriated and unlawfully used Block's trade secrets and confidential information.

In Count Four, labeled "Count V" in the complaint, Block alleges that all defendants engaged in a civil conspiracy to breach valid, enforceable contracts, tortiously interfere with Block's business relationships, and misappropriate trade secrets and confidential information. Specifically, Block claims that all defendants engaged in such a conspiracy "in an effort to cause H&R Block's clients to not return to H&R Block for tax preparation services." (Compl. ¶ 51.) Furthermore, Block contends that the conspiracy "had the intended effect of furthering the breach of the respective Agreements and the tortious and unlawful activities described above." (Compl. ¶ 52). In Count Five, labeled "Count VI" in the complaint, Block incorporates all preceding counts and allegations into its prayer for injunctive relief.

On June 28, 2005, defendants Dail, Parker and P&L Tax Service filed a joint Answer and Counter-Claim against plaintiff Block. In their Counter-Claim, defendants Dail and Parker allege that Block is engaging in retaliatory conduct proscribed by 42 U.S.C. § 1981. Dail and Parker contend that Block has filed suit against them in retaliation for their participation in a racial discrimination claim filed against it by a third party not involved in this case. Defendants Dail and Parker claim that a former co-worker, Deborah A. Lewis ("Lewis"), filed a complaint against Block alleging racial discrimination. Defendants Dail and Parker allege that Lewis named both Dail and Parker as witnesses in her lawsuit, and that Defendant Dail gave deposition testimony favorable to Lewis. Defendants Dail and Parker further allege that Block has "never filed a lawsuit against numerous former employees who have left employment with H&R Block and prepared tax returns in the same area for the same clients until after the lawsuit filed [by] Lewis."

3

(Countercl. ¶ 5.) Defendants Dail and Parker ultimately claim that any employment agreement between them and Block containing a covenant not to compete is unenforceable as an unreasonable restraint on trade, and, to the extent it may be enforced, it is being so for an improper purpose: to retaliate against defendants Dail and Parker for their aiding Lewis in her suit against Block.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the claimant. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint." *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENTS[3]

### I.    Plaintiff's Motion to Dismiss Counter-Claim.

Block argues that, as a matter of law, defendants Dail and Parker's Counter-Claim fails to establish a *prima facie* case of retaliation under 42 U.S.C. § 1981, because neither defendant can show that she suffered an adverse-employment action. Therefore, Block asserts, the Counter-Claim of defendants Dail and Parker should be dismissed.

---

[3]This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

**A.      Defendants Cannot Establish a *Prima Facie* Retaliation Claim Under 42 U.S.C. § 1981.**

42 U.S.C. § 2000e-3[4] (one of the number of statutes commonly referred to as "Title VII") provides in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3 (West 2005). "In order to establish a prima-facie case of retaliation under § 1981, [a party] may show that: (1) he [or she] engaged in statutorily protected expression; (2) he [or she] suffered an adverse-employment action; and (3) a causal connection exists between the two events." *Bradford v. Rent-A-Center East, Inc.*, 346 F. Supp. 2d 1203, 1212 (M.D. Ala. 2004) (*citing Little v. United Technologies,* 103 F.3d 956, 959 (11th Cir. 1997)).  Block argues that defendants Parker and Dail must satisfy all three elements to establish a *prima facie* case of retaliation. Block further argues that neither Dail nor Parker will be able to meet these threshold requirements, as Parker did not engage in protected expression, and neither defendant suffered an adverse-employment action. According to Block, neither defendant can produce a colorable claim of retaliation, because Block's filing suit to enforce an employment agreement does not qualify as an "adverse-employment action."

**1.      Defendant Parker Did Not Engage In Statutorily Protected Expression.**

---

[4]"[T]he Eleventh Circuit has held that Title VII and § 1981 'have the same requirements of proof and use the same analytical framework.'...However, in *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1463 n.4 (11th Cir. 1998), the appellate court stated that 'the concerns underlying a retaliation action brought pursuant to Title VII and § 1981 might, in some circumstances, be different.' The distinction between Title VII and § 1981 retaliation claims seems limited, however, to those instances where the retaliation alleged grows out of a claim not based on the race of the complainant." *Bradford v. Rent-A-Center East, Inc.*, 346 F. Supp. 2d at 1212, n.16.

According to Block, defendant Parker did not engage in any statutorily protected expression, the first requirement for a *prima facie* case of retaliation under Section 1981. Block points out that Parker was not deposed in Lewis' race discrimination case. According to Block, Parker's only involvement with Lewis' case is her being named on Lewis' Supplemental Rule 26 disclosures as an individual who may have "discoverable, non-privileged personal knowledge concerning facts surrounding the allegations contained in the Complaint", and being named a number of times during Lewis' deposition.

Block contends that this kind of behavior does not qualify as "statutorily protected expression." Block notes that, while the Eleventh Circuit has not strictly and exclusively defined this term, it has given examples of such "statutorily protected expression." *See, e.g., Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) (statutorily protected expression includes internal complaints of sexual harassment to superiors); *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998) (protected expression includes filing complaints with the EEOC); *Merriweather v. Alabama Dept. of Pub. Safety*, 17 F. Supp. 2d 1260, 1273 (M.D. Ala. 1998) (testifying in a co-worker's discrimination lawsuit meets the protected expression requirement). Block claims that Parker's being named as a potential witness on Lewis' Supplemental Rule 26 Disclosures does not rise to the standard articulated by the phrase "statutorily protected expression."

> ## 2. Neither Defendant Dail Nor Defendant Parker Can Establish That She Suffered an Adverse Employment Action.

Block argues that Defendants Parker and Dail cannot have suffered an adverse employment action, the second prong under the *Bradford/Little* analysis, because Block's filing

suit to enforce its employment agreements with the two defendants is not an employment action.

The defendants' claim in this regard, therefore, is definitionally without merit, according to

Block. Block acknowledges that a former employee may be considered an "employee" for

purposes of a § 1981 retaliation claim, but points out that "post-termination activity by a former

employer must somehow adversely affect the former employee's terms and conditions of

employment." *Garcia-Cabrera v. Cohen*, 81 F. Supp. 2d 1272, 1284 (M.D. Ala. 2000).

Block goes on to cite *Stravapoulos v. Firestone*, 361 F.3d 610 (11th Cir. 2004), for the

assertion that:

> [t]o be considered an adverse employment action for purposes of [42 U.S.C. § 1981's] anti-retaliation provision, the action must either be an ultimate employment decision or else must meet some threshold level of substantiality. Ultimate employment decisions include decisions such as termination, failure to hire, or demotion...[The threshold level of substantiality requires] the employment action to be objectively serious and tangible enough to alter [the employee's] compensation, terms, conditions, or privileges of employment.

*Id*. at 616-617 (*internal quotations omitted*).

Furthermore, according to Block, filing a lawsuit to enforce an employment agreement is not an

"ultimate employment decision." Block reasons that this is true as a matter of law because

Defendants Dail and Parker were not employed by Block at the time of filing. Block also

contends that the filing of this suit does not meet the threshold level of substantiality, citing

*Garcia-Cabrera v. Cohen*, 81 F. Supp. 2d at 1284-1285, for the assertion that post-termination

retaliation claims are cognizable only "where the retaliation results in discharge from a later job,

a refusal to hire the plaintiff, or other professional or occupational harm." In *Garcia-Cabrera*, the

Middle District of Alabama gave the above quoted test only as an *example* of cognizable

retaliation claims. *Id*. at 1285 (*citing Charlton v. Paramus Bd. of Education*, 25 F.3d 194, 200

(3d Cir. 1995). Other examples noted by the Middle District include *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir.1996) ("former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment ···" may sue under section 704(a)); *Reed v. Shepard*, 939 F.2d 484, 493 (7th Cir.1991) (excluding "from the realm of actionable retaliation claims those post-termination acts which are unrelated to the plaintiff's employment"); *Murphy v. Village of Hoffman Estates*, 959 F. Supp. 901, 907 (N.D. Ill.1997) (holding "that an employer's post-termination conduct must bear some nexus to the plaintiff's employment or efforts to secure future employment to be actionable retaliation"). *Garcia-Cabrera*, 81 F. Supp. 2d at 1285.

## II.    Defendants' Response.

### A.    Defendant Parker Engaged in Statutorily Protected Expression.

Defendant Parker argues that there is no tenable distinction between Defendant Dail and herself based on whether they were deposed in Lewis' case. Parker claims that, while "a minor appearance on a witness list might not always rise to the level of protected expression", this is not such a case. Drawing a distinction between Dail and Parker, according to Parker, merely because Block chose to depose Dail and chose not to depose Parker, would be an exercise in "flawed logic"[5]. Furthermore, Parker argues, counsel for Block was the same in both Lewis' case and this case; Block was therefore well aware of her "participation in" Lewis' case against Block. Basically, Parker asserts that she participated in Lewis' case, and that, while Block may ultimately be able to convince the final finder of fact that Parker's conduct did not rise to the level of statutorily protected expression, dismissal of this claim would be inappropriate under

---

[5]This court does not agree that such an argument is flawed.

Rule 12.

**B.    Block's Suit Against Parker and Dail Constitutes an Adverse Employment Action.**

Parker and Dail claim that Block's suit against them constitutes an adverse employment action. They point to the Eleventh Circuit case of *Wideman v. Wal-Mart Stores, Inc.*, to support that assertion:

> Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions...Read in the light of ordinary understanding, the term "discriminate" is not limited to "ultimate employment decisions." Moreover, our plain language interpretation of 42 U.S.C. § 2000e-3(a) is consistent with Title VII's remedial purpose. Permitting employers to discriminate against an employee who files a charge of discrimination so long as the retaliatory discrimination does not constitute an ultimate employment action, could stifle employees' willingness to file charges of discrimination.

*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)

According to Parker and Dail, though *Wideman* itself was not a case involving a counter-claim or lawsuit filed by a former employer, the logic of *Wideman* has been employed in other circuits to address that issue. *See, e.g., Gill v. Rinker Materials Corp.*, No. 3:02-CV-13, 2003 U.S. Dist. LEXIS 2986, at *15 (E.D. Tn. 2003) (holding that "the adverse action requirement for a retaliation claim encompasses an allegedly bad faith counterclaim brought by the employer against its former employee."); *Harmar v. United Airlines, Inc.*, No. 95 C 7665, 1996 U.S. Dist. LEXIS 5346, at *2 (N.D. Ill. 1996) (finding that "the filing of lawsuits, not in good faith and instead motivated by retaliation, can be the basis for a claim under Title VII."); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775, 778 (W.D. Va. 1980) (finding that the filing of a state defamation action by a former employer against its former employee was "unquestionably retaliatory.").

9

Parker and Dail further note other cases from the Seventh Circuit which, though not relying on *Wideman*, still point toward a general disposition (at least in that Circuit) to interpret "retaliation" broadly. *See Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 746 (7th Cir. 2002) ("The provision [in Title VII] regarding retaliation may intentionally be broader, since it is obvious that effective retaliation against employment discrimination need not take the form of a job action."); *Ruedlinger v. Jarrett*, 106 F.3d 212, 214 (7th Cir. 1997) (reversing dismissal of claim for post-termination retaliation); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996) (holding that "former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers under section 704(a)."); *Iskanian v. Forrester Clinic S.C.*, No. 02 C 9339, 2003 U.S. Dist. LEXIS 11041, at *7-*8 (N.D. Ill. 2003) ("[The defendant] faced civil claims that risked damaging her reputation and affecting adversely her prospects for future employment...we cannot say that [the former employer's] filing of a civil suit fails to constitute retaliation as a matter of law."). Ultimately, according to Parker and Dail, the logic expressed under *Wideman* should be extended to include Block's suit against them to enforce an employment agreement.

## III.   Plaintiff's Reply.

### A.   Defendant Parker Did Not Engage in Statutorily Protected Expression.

Block again contends that Parker's being named as a potential witness does not rise to the level of engaging in statutorily protected expression, because Parker did not actually do anything. Furthermore, Block argues, if the protection by Section 1981 were extended to every employee-witness named by a party opposing Block, it would lead to absurd results. Ultimately, Block

claims, being named as a witness in a third party's lawsuit against a former employer does not

fall under statutorily protected expression.[6]

**B.      Neither Parker Nor Dail Can Establish That They Suffered an Adverse**

**Employment Action.**

Block argues that the Defendants' reliance on two "unpublished foreign cases", namely

*Gill* and *Ishkanian*, for the assertion that the filing of a suit or counter-claim against a former

employee constitutes an adverse employment action is misplaced. These two cases are squarely at

odds with Eleventh Circuit precedent, according to Block. Block specifically cites *Garcia-*

*Cabrera v. Cohen*, 81 F. Supp. 2d 1272 (M.D. Ala. 2000), for its claim that there must be a nexus

between the action contested and the terms and conditions of the employee's employment. *Id*. at

1285 ("[A] former employee...must have suffered an 'adverse employment action' that relates to

the terms and conditions of his employment, in order to state a cognizable retaliation claim."). In

other words, according to Block, the Eleventh Circuit has already determined that such a nexus

must exist, and Seventh Circuit case law has no bearing on that determination.

**CONCLUSIONS OF THE COURT[7]**

––––––––––––––––––––

[6]This court agrees with that premise as such, but does not reach the issue of whether Defendant Parker has engaged in statutorily protected expression in this case.

[7]The court has not totally reached the issue of the circumstances under which retaliation claims may be maintained under § 1981 as opposed to Title VII. Judge Thompson in the Middle District of Alabama notes that, to the extent there is a distinction between the two, "[t]he distinction between Title VII and § 1981 retaliation claims seems limited, however, to those instances where the retaliation alleged grows out of a claim not based on the race of the complainant." *Bradford v. Rent-A-Center East, Inc*., 346 F. Supp. 2d 1203, 1212 n.16 (M.D. Ala. 2004). In *Standard v. A.B.E.L. Services, Inc*., 161 F.3d 1318, 1330 (11th Cir. 1998), the Eleventh Circuit held: "Both [§ 1981 and Title VII] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." Furthermore, in *Olmsted v.*

The only Eleventh Circuit language cited by the parties or found by this Court which have

some arguable application is the following:

> Although we have "not adopted a bright-line test for what kind of effect
> on the plaintiff's 'terms, conditions, or privileges' of employment the alleged
> discrimination must have for it to be actionable," we have clarified that "not all
> conduct by an employer negatively affecting an employee constitutes adverse
> employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th
> Cir. 2001). Indeed, "[a]lthough the statute does not require proof of direct economic
> consequences in all cases, the asserted impact cannot be speculative and must at
> least have a tangible adverse effect on the plaintiff's employment." *Id.* at 1239. Thus,
> "an employee must show a *serious and material* change in the terms, conditions or
> privileges of employment." *Id.* (emphasis in original). "Moreover, the employee's
> subjective view of the significance and adversity of the employer's action is not
> controlling; the employment action must be materially adverse as viewed by a
> reasonable person in the circumstances." *Id.*
>
> In *Davis*, the plaintiff's claim of disparate treatment was predicated on two
> kinds of employer acts, that is, negative job performance memoranda placed in his
> file and changes in his work assignments. *See id.* at 1240. We determined that the
> memoranda, which were not "formal" reprimands, and did not result in the plaintiff
> suffering any tangible consequences in the form of loss of pay or benefits, were not
> "adverse employment actions." *See id.* at 1240-1241. In reaching this determination,
> we explained that "criticisms of an employee's job performance - written or oral - that
> do not lead to tangible job consequences will rarely form a permissible predicate for
> a Title VII suit." *See id.* at 1241.

*Embry v. Callahan Eye Found. Hosp.*, No. 05-10905, 2005 WL 2009046, at *7 (11th Cir. Aug.

23, 2005).

> To the extent Embry also was attempting to establish a prima facie case of
> Title VII retaliation, to successfully assert such a claim, a plaintiff must show that
> (1) she engaged in statutorily protected expression; (2) she suffered an adverse
> employment action; and (3) the adverse action was causally related to the protected
> expression. *See Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004). To be
> considered an "adverse employment action" under Title VII's anti-retaliation
> provision, the action "must either be an ultimate employment decision or else must
> 'meet some threshold level of substantiality.' ' *Stavropoulos v. Firestone*, 361 F.3d

---

*Taco Bell Corp.*, 141 F.3d 1457, 1463 n.4 (11th Cir. 1998), the Eleventh Circuit noted that there
may be a distinction in claims brought under the two statutes if the retaliation claim is not based
on the race of the complainant, but that is unresolved by the Circuit. *Compare Jackson v.
Birmingham Bd. of Educ.*, 125 S. Ct. 1497 (2005).

610, 616-17 (11th Cir.2004) (citation omitted), cert. denied, --- U.S. ----, 125 S.Ct. 1850, 161 L.Ed.2d 727 (2005). "Ultimate employment decisions include decisions such as termination, failure to hire, or demotion." *Id*. at 617 (citation omitted).

Assuming that Embry's May 2001, complaint and her February 2002, filing of an EEOC charge constituted "statutorily protected expression," the only ultimate employment decisions Embry identified were her February 2002, reprimand and her April 2002, one-day suspension. Similar to the analysis of whether these acts were "adverse employment actions" for purposes of Embry's claims of disparate treatment, Embry failed to explain why these acts, which were not ultimate employment decisions, nevertheless met the "threshold level of substantiality" necessary for a retaliation claim. *See id*. at 618 (explaining that "not everything that makes an employee unhappy is an actionable adverse action," and that an "adverse employment action" involves conduct that "alters an employee's compensation, terms, conditions, or privileges of employment").

Even if Embry's reprimand and suspension were "adverse employment actions," she only needed to show that "the decision-maker[s] [were] aware of the protected conduct," and "that the protected activity and the adverse action were not wholly unrelated." *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir.2000) (quotation omitted). Moreover, "[a] plaintiff satisfies this [causation] element if [s]he provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.2004) (quotation and marks omitted) (reviewing grant of summary judgment in claim filed under the anti-retaliation provision of the Americans with Disabilities Act).

However, this "temporal proximity" must be "very close." *Id* . "If there is a substantial delay between the protected expression and the adverse action [,] in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id*. at 1220. Applying this analysis, we concluded in *Higdon* that a three-month period between the protected activity and the adverse employment action, in the absence of other evidence of causation, was insufficient to establishing a prima facie case of Title VII retaliation. *Id*. at 1220-21.

In *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir.1999), we also concluded that the district court did not err in determining that the employee failed to establish this causation element. *Id*. at 1370. In Maniccia, the employee was reassigned to a different position 15 months after she filed a sexual harassment grievance against her supervisor, and her employment was terminated 21 months later. *Id*. at 1369-70. We determined that (1) instead of representing a pattern of retaliatory activity, these two employment actions were isolated events that had no temporal relationship to her protected activity; and (2) "[t]he more than 15-month period that elapsed between [her] grievance and the alleged adverse employment actions belie[d] her assertion that the former caused the latter." *Id*. at 1370. In addition, we explained that the employee failed to show any other evidence suggesting this causation. *Id*.

Similar to the three-month delay in Higdon, the nine-month gap between

Embry's protected activity in May 2001 of complaining of race discrimination to Burleson, and her February 2002 reprimand, was insufficient to establish the requisite causation in the absence of any other evidence of causation. Moreover, in the absence of "a close temporal relationship," Embry failed to produce sufficient alternative evidence showing that her protected activity and this reprimand were "not wholly unrelated." *See Gupta*, 212 F.3d at 590. Indeed, similar to the facts in *Mannicia*, Embry did not cite to any other discipline she received between these two events and, thus, failed to show a pattern of retaliatory acts. *See Maniccia*, 171 F.3d at 1370.

More importantly, Elkins was not present when Embry raised her discrimination complaint in June 2001, and Elkins attested that she did not know that Embry complained to Burleson about race discrimination. Embry, therefore, failed to establish that Elkins "was actually aware of the protected expression at the time [she] took adverse employment action." *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.2000) (reasoning that "a decision maker cannot have been motivated to retaliate by something unknown to him"); see also *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir.2002) (reasoning that "neither a court nor a jury may impute knowledge to a decision-maker who has sworn he had no actual knowledge"). Thus, the court also did not err in concluding that no genuine issue of material fact existed on whether Embry successfully alleged a prima facie claim of Title VII retaliation based on her February 2002, reprimand. *See Cooper*, 390 F.3d at 740.

On the other hand, as the district court concluded, the shorter period time between Embry's filing her EEOC charge on February 15, 2002, and her one-day suspension on April 15, 2002, was sufficiently close to establish causation for purposes of a prima facie case of Title VII retaliation. See *Higdon*, 393 F.3d at 1220. Moreover, Elkins did not testify that she was unaware of Embry's EEOC charge. Nevertheless, as discussed below, the district court correctly granted summary judgment on this claim because Embry failed to show that Callahan's articulated reason for imposing the one-day suspension was pretextual.

Issue 2: *Pretext*

Assuming as the court did that Embry could establish a prima facie case of retaliation based on her suspension claim, Embry argues that the court erred in concluding that she failed to show that Callahan's articulated reasons for its challenged conduct were pretextual. Embry specifically contends that Callahan's reason for her April 2002, suspension was belied by (1) testimony that other coworkers were not suspended for violating the fragrance policy, and (2) the January 31, 2002, e-mail between Elkins and Bailey that Embry interprets as showing that Elkins would take pleasure in disciplining her.

As discussed above, once a plaintiff successfully alleges a prima facie case of retaliation, and once the employer articulates a legitimate, non-discriminatory reason for the challenged employment action, the plaintiff must proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the

14

defendant employer's articulated reasons is pretextual. *Sullivan*, 170 F.3d at 1059. In determining whether the plaintiff has met this burden, courts examine whether "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action [exist, such] that a reasonable factfinder could find [all of the reasons] unworthy of credence." *Vessels v. Atlanta Independent School Sys.*, 408 F.3d 763, 771 (11th Cir.2005).

As a preliminary matter, to the extent Embry has implied that Callahan's argument that her suspension was based on her violation of the fragrance policy was pretextual because she was wearing a fragrance that had not previously bothered Capps, "Title VII does not take away an employer's right to interpret its rules as its chooses, and to make determinations as it sees fit under those rules." See *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984). "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer." *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir.2001) (internal quotation and marks omitted).

To the extent Embry also has cited in support of her pretext argument to the fact that Morrison was not suspended, even though he conceded that he wore cologne after April 10, 2002, Embry has correctly asserted that a plaintiff may demonstrate pretext through comparative evidence. *See Miles v. M.N.C. Corp.*, 750 F.2d 867, 870 (11th Cir.1985). However, as discussed above, Morrison is not a proper comparator because Elkins did not catch him wearing cologne after April 10, 2002. Moreover, Embry failed to identify another proper comparator because, assuming as true Embry's testimony that other coworkers wore fragrances after April 10, 2002, Elkins never caught them wearing a fragrance and, thus, did not believe they were in violation of the policy. See Cooper, 390 F.3d at 740 (explaining that the relevant issue for pretext was not whether the employee actually violated the employer's rule, but whether the employer "honestly believed" that the violation occurred).

To the extent Embry is relying on the contents of Elkins's e-mail to Bailey on February 1, 2002, as evidence of pretext, this e-mail included the following comment by Elkins in response to Bailey's suggestion that Elkins would need to discipline employees violating the policy about not eating during work hours: "I agree ... want [sic] that be fun, I can't wait." Elkins, however, testified during her deposition that, instead of expressing a retaliatory intent, this comment was intended to be sarcastic because, at the time in question, she was having to spend a lot of energy monitoring employees.

Furthermore, even assuming that this comment was not sarcastic, Embry has failed to explain why this general statement about disciplining the employees in the business office, and which was sent two weeks before Embry filed her EEOC charge, showed that Elkins had an intent to retaliate against Embry for engaging in protected activity. *See Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990) (holding that "[m]ere conclusory allegations and assertions will not suffice" to establish pretext (citation omitted)). We have explained that, although a comment

15

unrelated to a challenged employment decision may contribute to a circumstantial case for pretext, "it will usually not be sufficient absent some additional evidence supporting a finding of pretext." See *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th. Cir.2002) (citations omitted). Thus, assuming that Embry established a prima facie case of retaliation based on her suspension, Embry failed to show that a genuine issue of material fact existed as to pretext.

*Embry v. Callahan Eye Found. Hosp.*, No. 05-1095, 2005 WL 2009046, at *9 -12 (11th Cir. Aug 23, 2005).

Every other court that we have found to have addressed this issue has held that former employees have standing to sue, contrary to the district court here. *Pantchenko v. C.B. Dolge Company, Inc.*, 581 F.2d 1052 (2d Cir.1978); *Rutherford v. American Bank of Commerce*, 565 F.2d 1162 (10th Cir.1977); *Bahu v. Fuller O'Brien Paints*, 41 Fair Empl.Prac.Cas. (BNA) 1231 (N.D.Ind.1986) [available on WESTLAW, 1986 WL 12048]; *Atkinson v. Oliver T. Carr Co.*, 40 Fair Empl.Prac. Cas. (BNA) 1041 (D.D.C.1986) [available on WESTLAW, 1986 WL 6997]; *Bilka v. Pepe's, Inc.*, 601 F.Supp. 1254 (N.D.Ill.1985); *Sparrow v. Piedmont Health Systems Agency, Inc.*, 593 F.Supp. 1107, 1119 (M.D.N.C.1984); *Helwig v. Suburban Chevrolet*, 33 Fair Empl.Prac.Cas. (BNA) 1261 (D.Md.1983) [available on WESTLAW, 1983 WL 539]; *Czarnowski v. Desoto, Inc.*, 518 F.Supp. 1252, 1257 (N.D.Ill.1981); *EEOC v. Virginia Carolina Veneer Corp.*, 495 F.Supp. 775, 777 n. 6 (N.D.Va.1980), appeal dismissed, 652 F.2d 380 (1981).

These cases have been variously reasoned but have turned generally on a common sense reading in keeping with the purpose of the statute. While it is true that the language of a statute should be interpreted according to its ordinary, contemporary and common meaning, see *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108- 09, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute. In the instant case, a strict and narrow interpretation of the word "employee" to exclude former employees would undercut the obvious remedial purposes of Title VII. The same rationale has been applied in construing nearly identical anti-retaliation provisions in the Age Discrimination in Employment Act and in the Fair Labor Standards Act. *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1088 (5th Cir.1987) (term "employee" as used in anti-retaliation provision of Age Discrimination in Employment Act, 29 U.S.C.A. § 623(d), encompasses former employees); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 147 (6th Cir.1977) (term "employee" in anti-retaliation provision of Fair Labor Standards Act, 29 U.S.C.A. § 215(a)(3), encompasses former employees). We join these courts and hold that former employees may sue for retaliation under Title VII.

*Bailey v. USX Corp.*, 850 F.2d 1506, 1509-1510 (11th Cir. 1988).

We join the majority of circuits which have addressed the issue and hold

that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions. The Fifth and Eighth Circuits' contrary position is inconsistent with the plain language of 42 U.S.C. § 2000e-3(a), which makes it "unlawful to discriminate against any of his employees ... because he has made a charge ..." (emphasis added). Read in the light of ordinary understanding, the term "discriminate" is not limited to "ultimate employment decisions." Moreover, our plain language interpretation of 42 U.S.C. § 2000e-3(a) is consistent with Title VII's remedial purpose. Permitting employers to discriminate against an employee who files a charge of discrimination so long as the retaliatory discrimination does not constitute an ultimate employment action, could stifle employees' willingness to file charges of discrimination.

Although we do not doubt that there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause, we need not determine in this case the exact notch into which the bar should be placed.

*Wideman v. Wal-Mart Stores, Inc.*  141 F.3d 1453, 1456 (11th Cir. 1998).

Furthermore, it is unlawful under Title VII for an employer to retaliate against an employee "because [the employee] has opposed any practice made an unlawful employment practice, ...or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII]." 42 U.S.C. § 2000e-3(a).

*Cooley v. Great Southern Wood Preserving*, 138 Fed. Appx. 149, 156 (11th Cir. 2005).

Title VII, § 2000e-3(a) contains an anti-retaliation provision which forbids employers from discriminating against an employee because she has opposed an unlawful employment practice, or because she has made a charge or participated in any way in an investigation, proceeding or hearing under the Act. An employer is not precluded from filing a defamation suit to vindicate his reputation if the suit is brought in good faith. *Equal Employment Opportunity Commission v. Levi Strauss & Co.*, 515 F. Supp. 640, 643 (N.D. Ill. 1981). However, a state court defamation suit filed in retaliation for making an EEOC charge clearly violates Title VII. *Id*. at 642; *Equal Employment Opportunity Commission v. Virginia Carolina Veneer Corp*., 495 F. Supp. 775 (E.D. Va. 1980). In the instant case, Plaintiff alleges that Defendants' state court action was filed for retaliatory purposes. That allegation, which for purposes of this motion must be taken as true, is sufficient to defeat Defendants' motion to dismiss.

*Urquiola v. Linen Supermarket, Inc.*, No. 94-14-CIV-ORL-19, 1995 WL 266582, at *1 (M.D.

Fla. Mar. 23, 1995).

The district court granted summary judgment on Stavropoulos's Title VII retaliation claim, because it concluded that Stavropoulos failed to make out a prima

facie case. To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1117 (11th Cir.2001). The court held that Stavropoulos failed to show an adverse employment action.

To be considered an adverse employment action for purposes of Title VII's anti-retaliation provision, the action must either be an ultimate employment decision or else must "meet some threshold level of substantiality." *Id.* at 1118 (internal quotations omitted). Ultimate employment decisions include decisions such as termination, failure to hire, or demotion. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998). The conduct Stavropoulos complains of was not an ultimate employment action, because she did not lose her job or suffer a lessening of pay, position, or benefits. Thus, we must ask whether it rises to the level of substantiality.

In *Wideman*, 141 F.3d at 1455-56, we concluded that the plaintiff had crossed the threshold of substantiality where she established that her employer had improperly listed her as a no-show on a day she was scheduled to have off, gave her written reprimands which resulted in a one-day suspension, solicited comments on her performance from only those employees with negative things to say about her, failed to schedule her for work, threatened to shoot her in the head, and delayed authorizing medical treatment for an allergic reaction she was having. *Id.* at 1455-56 (holding that the totality of these acts meet the threshold of substantiality, but declining to decide whether anything less than the totality would meet the threshold). In *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571 (11th Cir.2000), we characterized the threshold as requiring the employment action to be " 'objectively serious and tangible enough' to alter [the employee's] 'compensation, terms, conditions, or privileges of employment ...,' " and held that scheduling the employee to teach on three different campuses in one term did not meet the threshold because she never actually had to follow this schedule, denying her the opportunity to teach a particular class did not suffice because she chose not to teach at all that term, and delaying the return of the employee's visa application was not serious enough because the university returned it to her in time for her to file it with the Immigration and Naturalization Service. *Id.* at 588 (*quoting Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997)). Our reason for rejecting these three acts as insubstantial was that "[a]n action which, it turns out, had no effect on an employee is not an 'adverse' action." *Id.* at 588. Applying this standard in *Bass*, 256 F.3d at 1118, we decided there was an adverse employment action when, comparing the plaintiff to other employees of the same rank, the employer forced plaintiff to perform more menial tasks under less senior personnel; denied the plaintiff opportunities to earn several types of extra pay available to his co-workers; and forced plaintiff to take tests in order to maintain his paramedic pay, while not requiring his co-workers to take the tests. We rejected, however, the employer's ordering plaintiff not to record certain tasks in his work log

18

and ordering him to destroy certain materials he had created as insubstantial because they "in no way punished or affected Bass' employment status." *Id*.

Here, the acts Stavropoulos complains of ultimately had no effect on her employment status. Though agents of the Board rated her negatively and voted to terminate her, other agents of the Board overrode the votes, keeping Stavropoulos in her position, with the same pay and benefits. Thus, these acts were not objectively serious and tangible enough to be adverse employment actions. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir.2001) (noting that Title VII retaliation caselaw "indicates that the decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action"). *Cf. Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 543-46 (6th Cir.1999) (affirming summary judgment for university in associate professor's Title VII discrimination case because, on the professor's appeal, the faculty senate reversed the dean's decision to deny her tenure, and awarded tenure retroactively so that she lost no salary; thus there was no adverse employment action). Any emotional distress or costs incidental to Stavropoulos's seeking the review provided in her contract with the Board is likewise too insubstantial to be considered an adverse employment action since the review proved successful for Stavropoulos. *Bass*, 256 F.3d at 1118 ("While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute an adverse action under [the anti-retaliation provisions of] Title VII.") (internal citations and quotations omitted).

*Stavropoulos v. Firestone*, 361 F.3d 610, at 616 -618 (11th Cir. 2004).

Gupta alleges that she suffered numerous adverse employment actions. An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997) (citation and internal marks omitted). Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality ... to be cognizable under the anti-retaliation clause." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998). In evaluating what actions meet that required level of substantiality, we recognize that "Title VII[ ] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.' " *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir.1999) (citation omitted). Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, id. at 1178, using both a subjective and an objective standard, see *Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448-49 (11th Cir.1998) (recognizing that the subjective requirement is virtually almost always satisfied and imposing an objective requirement, as well).

Gupta presented testimony that she was subject to the following actions,

19

which she contends are adverse employment actions: (1) she was not given a pay raise despite an above satisfactory evaluation by her supervisor; (2) she was denied an extension on her tenure clock; (3) she was placed on the search committee for a position at the University's Boca Raton campus, which prevented her from applying for that position; (4) she was assigned to teach more credit hours than other professors and to teach classes on three different campuses in the Fall 1997 session; (5) she was not assigned to teach a desired class in the Summer 1995 second session; (6) Dean White's office intentionally delayed her visa application to the Immigration and Naturalization Service; and (7) the informal resolution process involving her sexual harassment claim was terminated without notice after she missed one deadline.

The last five listed actions that Gupta complains of are not "adverse employment actions." None of those actions were "objectively serious and tangible enough" to alter Gupta's "compensation, terms, conditions, or privileges of employment, deprive ... her of employment opportunities or adversely affects ... her status as an employee." *Robinson*, 120 F.3d at 1300 (internal marks omitted). First we consider Gupta's placement on the search committee to fill a position at the University's Boca Raton campus, which prevented her from applying for that position. Although Gupta had indicated some interest in the position at the time she was asked to serve on the search committee, she had not yet applied for the position. Once asked to serve on the committee, Gupta accepted the offer to serve and at no time asked to be removed from the committee. Serving on a search committee is something most people would consider an honor and Gupta's doing so without objection cannot be considered an adverse employment action.

Nor do Gupta's teaching assignments constitute adverse employment actions. Stronge testified that scheduling Gupta to three different campuses was a mistake, and once he became aware of it, he promptly corrected the mistake. He then revised Gupta's schedule so that she was teaching only two classes on two different campuses. She never taught on more than two campuses in any term. A proposed action that is corrected as soon as the proper official is made aware of it and before it goes into effect, so that the employee does not actually suffer any consequence, is not "adverse."

A university can assign its professors to teach the classes it needs them to teach. Although Gupta complains that she was not assigned a particular class in the second session of Summer 1995, she presented no evidence at all that she was in any way entitled to or particularly deserving of that class, as opposed to the classes she was assigned to teach, or that other untenured professors routinely got to cherry-pick the classes they taught. Besides, Gupta later chose not to teach at all that summer, because she "was not feeling good." Instead of teaching, she took a trip to Hawaii with a friend. An action which, it turns out, had no effect on an employee is not an "adverse" action. Under the facts and circumstances of this case, Gupta's teaching assignments do not constitute actionable adverse employment actions.

The delay by White's office in completing and returning Gupta's visa application to the Immigration and Naturalization Service was not an adverse employment action. Although the visa application was not completed promptly, it

20

was returned to Gupta in sufficient time for her to file the application with the Immigration and Naturalization Service, which she did. Gupta was in no way harmed by the delay. It follows that the action, or inaction, was not "adverse."

Finally, the University's termination of the informal resolution process involving Gupta's sexual harassment claim, without first warning her that if she missed the deadline they would close the case, was not an adverse employment action. Gupta chose to use the University's informal resolution process, and on March 30, 1995, she was given a proposed settlement agreement prepared by the University's attorney. She took the settlement agreement home, but later chose not to sign it because she did not want "to give up [her] rights." Notwithstanding that decision, around April 6, 1995, Gupta asked Paula Behul, the Director of Equal Opportunity Programs, for more time to respond to the proposed agreement. Behul gave her sixty additional days in which to respond. Gupta, however, failed to respond during the additional sixty-day period. In June of 1995, Gupta stopped by Behul's office and said that she had been very busy and would get back with her some time in the future. In September of 1995, after having not heard from Gupta for almost three months following the sixty-day extension, Behul scheduled a meeting with Gupta in an attempt to resolve the issue. At that meeting, the two of them agreed that Gupta would give Behul a counter-proposal to the proposed agreement no later than October 9, 1995. Gupta did not return the counter-proposal by that deadline. On October 12, 1995, Behul sent Gupta a letter stating that the informal resolution process was terminated. That termination occurred after six months of attempting to get Gupta to respond to the University's settlement proposal.

To begin with, an employer is not legally required to attempt to settle an employee's Title VII claim at all. Any action or inaction in regard to settlement of a claim cannot be retaliation for making the claim in any meaningful sense, because every action or inaction in regard to settlement of the claim is caused by the claim. The anti-retaliation provisions of the various job discrimination statutes are aimed at preventing the employer from punishing the employee by making job conditions worse. The failure to settle a claim for whatever reason does not make job conditions worse as a result of the claim having been made. They are already "worse" (if the underlying claim is valid). The failure to settle is not something that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson*, 120 F.3d at 1300 (internal marks omitted). The settlement of a claim, in short, is not a condition of employment.

Having explained why five of the seven actions about which Gupta complains were not adverse employment actions, we turn now to the remaining two--not being given a pay raise despite an above satisfactory evaluation and the denial of an extension on her tenure clock. The denial of a pay raise clearly affects Gupta's compensation, and tenure-related decisions affect an important term of employment for a university professor. They are adverse employment actions.

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 -590 (11th Cir. 2000).

With respect to Bass' § 1981 retaliation claim, the situation is less clear. We have previously noted that whether the elements of Title VII and § 1981 retaliation claims are the same is an "open question" in this Circuit. *See Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1463 n. 4 (11th Cir.1998). However, the parties have not raised or argued that issue before us, so we will not attempt to decide it now.

*Bass v. Board of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1120 (11th Cir. 2001).

Notably, our prior decisional law leaves unclear whether Olmsted could have prevailed on his § 1981 claim even if we were to find that the claim had not been abandoned in the pretrial statement. Taco Bell points out that our decision in *Little v. United Technologies*, 103 F.3d 956 (11th Cir.1997), seems to indicate that the concerns underlying a retaliation action brought pursuant to Title VII and § 1981 might, in some circumstances, be different. We acknowledge that Little can be read to prohibit suits under § 1981 where the retaliation alleged is not based on the race of the complainant; we further note, however, that prior to our discussion of the plaintiff's § 1981 claim in that case, we discussed at length--in the context of Title VII--our determination that the plaintiff had not shown that he had engaged in statutorily protected conduct that would give rise to a retaliation claim. *See id.* at 9959- 60. Little, therefore, does not stand unambiguously for the proposition argued by defendants, particularly in light of the facts presented in that case, i.e., that there had been no showing of retaliation on the basis of the race of either the plaintiff or of the subject matter about which the plaintiff had complained. Indeed, the scope of relief available under § 1981 with respect to retaliation claims appears to remain largely an open question in this circuit. *See, e.g., Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir.1997) (where white employees allegedly were retaliated against for complaining of discrimination against black employees, white plaintiffs had standing to proceed under § 1981); *Reynolds v. CSX Transportation, Inc.*, 115 F.3d 860, 868 n.10 (11th Cir.1997)("In its entry of judgment, the district court noted that the damages awarded for retaliation could be based on either Title VII or § 1981. This court has not yet addressed the types of retaliation claims cognizable under § 1981 in light of the Civil Rights Act of 1991."). In light of our conclusion with respect to Olmsted's abandonment of his § 1981 claim in this case, we need not resolve the precise contours of § 1981, as amended by the 1991 Act, with respect to retaliation claims.

*Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1463 n.4 (11 th Cir. 1998).

The defendants have not alleged that they have lost their jobs or had other action taken as a result of the suit. They are arguing that having to defend the suit, and even Block's enforcing the employment agreement, constitute retaliatory conduct. They argue that enforcement of the agreement constitutes an adverse employment action because it affects their future employment.

22

Block's success would mean that they cannot engage in their profession for a period of time in the area in which they live. In short, their argument is: "Block's suit is an adverse employment action because they never enforce their agreement against anyone else, and are doing it against us ONLY because we participated in another party's suit against Block. The present suit is pure retaliation, regardless of its underlying merits."

This court has found no controlling case which holds that a suit attempting to enforce an employment agreement can constitute an adverse action. On the other hand, there does not appear to be a controlling case to the contrary. While the defendants' retaliation claims are close at best, this court feels that the issue can be best addressed at trial or, possibly, on motion for summary judgment. In the event of a trial, the court would likely sever the defendants' claim to be tried after a determination of the plaintiff's claims. Although the question is close, the court will deny the Motion to Dismiss Defendants Parker's and Dail's Counter-Claims.

This 22nd of September, 2005.



**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**